UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 24-1144(DSD/ECW)

Krishnan Ghosh,

        Plaintiff,

v.                                        **ORDER**

Abbott Laboratories, Inc. and
Cardiovascular Systems, Inc.,

        Defendants.

This matter is before the court upon plaintiff Krishnan Ghosh's motion for leave to amend his complaint and defendants' motion to dismiss. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies the motion to amend and grants the motion to dismiss.

**BACKGROUND**

This dispute arises out of defendant Cardiovascular Systems, Inc.'s (CSI) decision to terminate Ghosh's employment on May 31, 2023. Ghosh lived in Hawaii and worked as the senior district sales manager serving CSI clients in Hawaii. Am. Compl. ¶¶ 18, 27, 28. CSI is a medical device company focused on treating complex artery diseases. See Abbott.com/CSI.html (last visited Oct. 9, 2024). CSI is based in St. Paul, Minnesota. Am. Compl. ¶ 7.

**I.   Ghosh's Employment**

Ghosh and CSI entered into an employment agreement on February 2, 2023.  Id. ¶¶ 18-19.  Ghosh started work for CSI on February 20, 2023.[1]  Id. ¶¶ 23, 28.  He alleges that he was "required to perform services for hire in Minnesota" before starting work in Hawaii.  Id. ¶ 28.  He underwent a "lengthy Minnesota-based certification process from February 20 to May 23, 2023."  Id.  This process required him to "routinely" be in Minnesota for "on-site training sessions at CSI headquarters, hospital account visits, case observations, physician interactions, as well as other services for CSI."  Id.  Ghosh was present in Minnesota for a total of twelve days during his employment: February 26 to March 3 and April 23 to April 28.  Id. ¶ 29.  He completed his training on May 23, which allowed him to "fully perform" his job in Hawaii.  Id. ¶ 31.  When in Hawaii, Ghosh remotely participated in meetings with CSI.  `Id. ¶ 30.

CSI terminated Ghosh's employment on May 31, 2023.  Id. ¶ 92.  He alleges that he was terminated because he uncovered and reported illegal conduct by CSI in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a, et seq.[2]  See id. ¶¶ 33-91, 93-94.  Ghosh claims

---

[1]   In the amended complaint, Ghosh alleges that he was also employed by Abbott Laboratories, Inc. after Abbott acquired CSI in April 2023.  Am. Compl. ¶¶ 21, 107.

[2]   He made the reports on March 31, 2023, April 26, 2023, and May 9, 2023.  Am. Compl. ¶¶ 71, 73, 75.

2

that CSI provided no reason for his termination at the time. See id. ¶ 98. A few months later, however, CSI disclosed in writing that it terminated Ghosh for "conduct-related reasons, including that he aided a competitor over his own employer" and that he "engaged in demeaning and disrespectful behavior."[3] ECF No. 24-1.

**II.  Ghosh's First Lawsuit**

On January 24, 2024, Ghosh filed a complaint in Minnesota state court against Abbott Laboratories, Inc., alleging a violation of the Minnesota Whistleblower Act (MWA).[4] Abbott timely removed the case to federal court. See Ghosh v. Abbott Labs., Inc., Civil No. 24-578, ECF No. 1. Abbott then moved to dismiss the complaint, which prompted Ghosh to file an amended complaint. See id. ECF Nos. 8 and 14. The magistrate judge notified Ghosh that the amended complaint was procedurally improper. See id. ECF No. 15. Ghosh voluntarily dismissed the case the same day. See id. ECF No. 16.

---

[3] The court does not consider matters outside the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court may, however, take into account matters of public record and materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp, 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). The court views the writing as embraced by the pleadings given that it was mentioned in the amended complaint. See Am. Compl. ¶ 98.

[4] It is unclear why Ghosh did not name CSI, his direct employer, as a defendant.

3

**III. The Instant Lawsuit**

Two days later, Ghosh initiated the instant lawsuit raising the same allegations and claim as in the initial lawsuit. In fact, the complaint filed in this case is nearly identical to the proposed amended complaint in the first lawsuit. Compare id. ECF No. 14, with ECF No. 1 in Civil No. 24-1144. Ghosh did not disclose that the newly filed case was related to the recently dismissed case. See ECF No. 1-1 in Civil No. 24-1144. The case therefore was assigned to a different district court judge and a different magistrate judge. See id. ECF No. 2.

Abbott again moved to dismiss the complaint and Ghosh again filed an amended complaint.[5]  ECF Nos. 11, 17. The amended complaint added CSI as a defendant and raised a new claim under the Hawaii Whistleblowers' Protection Act (HWPA). ECF No. 17.

On May 24, 2024, defendants moved to dismiss the amended complaint for failure to state a claim. ECF No. 21. Ghosh then filed a motion to amend the amended complaint. ECF No. 26. If

---

[5] Simultaneous with filing the amended complaint, Ghosh filed an unsolicited letter to the court explaining why he dismissed the first case in favor of a new one. ECF No. 18. He stated that because the magistrate judge determined that the amended complaint in the first case could not be filed as a matter of right, he dismissed that case so he could have "the case heard on the merits as soon as possible." Id. at 3. He did not explain why doing so was more efficient than simply moving to amend the complaint in the first case. See id.

4

granted, this would be Ghosh's fifth pleading attempt in this matter.

The proposed second amended complaint differs from the amended complaint in the following relevant ways:

- It adds Abbott Laboratories, the parent company of Abbott Laboratories, Inc., as a defendant. ECF No. 26-2 ¶ 6.

- It provides more information about the corporate relationships among defendants. See id. ¶¶ 8-18, 32, 103.

- It alleges that during training in Minnesota, Ghosh provided "valuable expertise" not known by the trainers. Id. ¶ 35.

- It alleges that CSI typically had sales representatives return to Minnesota yearly for additional training and that he expected that he would be required to do so. Id. ¶ 39.

The proposed second amended complaint does not raise any new legal claims.

Defendants oppose Ghosh's motion to amend his complaint and maintain that their motion to dismiss should be granted.

## DISCUSSION

### I. Motion to Amend

When a plaintiff moves to amend a complaint after a motion to dismiss has been filed, as Ghosh has done here, the court must first address the motion to amend. See Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002). "[T]he court should freely give leave [to amend] when justice so requires."

5

Fed. R. Civ. P. 15(a)(2).  The court may deny leave to amend "if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  Reuter v. Jax Ltd., Inc., 711 F.3d 918, 922 (8th Cir. 2013) (internal citations omitted).

Defendants argue that Ghosh's motion to amend should be denied because the proposed amendments are made in bad faith, were unduly delayed, and are futile.

**A.   Bad Faith**

According to defendants, Ghosh's bad faith is evinced by his attempt to contradict allegations raised in the first amended complaint and circumvent defenses raised in the motion to dismiss. Ghosh responds that the proposed amendments are simply designed to correct the amended complaint's deficiencies.

"[B]ad faith is a subjective inquiry that requires proof that the moving party acted 'with intent to deceive, harass, mislead, delay, or disrupt.'"  ecoNugenics, Inc. v. Bioenergy Life Sci., Inc., 355 F. Supp. 3d 785, 791 (D. Minn. 2019) (quoting Wizards of the Coast LLC v. Cryptozoic Ent. LLC, 309 F.R.D. 645, 651 (W.D. Wash. 2015)).  The court cannot conclude with certainty that Ghosh has proceeded in bad faith with respect to the proposed amendments. Although some of the allegations could be deemed contradictory, they are not plainly so.  Nor is attempting to address defenses by

6

itself evidence of bad faith.  That said, the history of this case raises questions about Ghosh's intent.

Ghosh has filed or attempted to file four previous complaints in this and the first lawsuit, all while being represented by the same counsel.  Given that the relatively minimal changes in each amendment - including those amendments in what would be the fifth complaint - were arguably knowable from the outset of the first case, there is reason to question whether this matter is being prosecuted in good faith.

The court is especially dubious of Ghosh's statement that he dismissed the previous case so that he would be able to proceed more expeditiously on the merits in a new case.  This makes little sense.  Ghosh could have moved to amend the complaint in the first case, which would have been resolved long before the instant motion.  Instead, he filed this case, amended the complaint once as a matter of right, and now seeks to amend again.  This course of action has done nothing to expedite his claims.

The more reasonable interpretation of Ghosh's actions is that he did not want to proceed before the district judge and the magistrate judge assigned to the first case, perhaps because the latter may not have seemed amenable to Ghosh's proposed amendments. This may explain why Ghosh did not identify the first case as a related matter on the civil cover sheet for this case. Plaintiffs certainly have a right to voluntarily dismiss complaints and refile

7

consistent with local rules and the Federal Rules of Civil Procedure, but the court is free to assess the intent behind such decisions. The court is uncomfortable with how this matter has proceeded but cannot determine with certainty that Ghosh has moved to amend in bad faith.

**B.   Undue Delay**

Defendants argue that Ghosh unduly delayed the proposed amendments because the new allegations were ascertainable from the outset of the first case. Based on the record, the court agrees that the newly raised allegations could and should have been known to Ghosh for many months. Ghosh argues that he only learned of relevant facts after defendants moved to dismiss the amended complaint. But at least some of the facts are publicly known, e.g., defendants' corporate relationship, and some were based on Ghosh's personal knowledge, e.g., screenshots of his texts and emails and comments about his training. See ECF No. 26-2. Ghosh further suggests that defendants are responsible for any delay because they should have provided him with relevant information before discovery started, ECF No. 28, at 7 n.3, 8, which would have obviated the need to amend. But defendants are under no obligation to do so at this stage of the proceedings.

Although the court agrees that there has been delay in bringing the proposed amendments, it does not find that there has been undue delay in the case as a whole. Defendants are

8

understandably frustrated, but the court cannot conclude that they have been prejudiced unfairly by any delay.

### C. Futility

An amendment is futile when it could not survive a motion to dismiss under Rule 12(b)(6). Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010). Because Ghosh's proposed amendments do not include new claims against defendants, the court will address the merits of his claims under the MWA and HWPA in the context of defendants' motion to dismiss. As discussed below, Ghosh's claims are legally untenable, even considering the proposed amendments.[6] The motion to amend will therefore be denied as futile.

## II. Motion to Dismiss

### A. Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal,

---

[6] Because the court concludes that Ghosh has failed to state a claim under either the MWA or HWPA, the issue of whether the Abbott defendants are properly named in this case is effectively moot and will not be addressed.

556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim.  Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

**B.   MWA**

The MWA protects an employee who, in "good faith, reports a violation, suspected violation, or planned violation of any federal or state law ...."  Minn. Stat. § 181.932, subdiv. 1(1).  "Employee" is defined as "a person who performs services for hire in Minnesota for an employer."  Minn. Stat. § 181.931, subdiv. 2.  Defendants argue that Ghosh is not an employee within the meaning of the MWA because he attended training here but did not perform services for hire here.  Rather, he engaged in sales in Hawaii, which was his sales territory.  They also argue that Ghosh was not in Minnesota for enough time to meet the statute's implicit – and judicially recognized – ongoing physical presence requirement.

As to the first point, the amended complaint alleges that Ghosh was in Minnesota for purposes of training, which included on-site training at CSI and hospitals, and involved physician interactions and case reviews.  See Am. Compl. ¶ 28.  Ghosh does not allege that he engaged is sales with Minnesota medical

10

providers while training here.  Nor could he, given that his sales territory was Hawaii, not Minnesota.  In his proposed second amended complaint, he tries to bolster this aspect of his claim by alleging that during training in Minnesota, he provided "valuable expertise" not known by the trainers.  ECF No. 26-2 ¶ 35.  But this new allegation does not change the fact that he was engaged in training, not sales, while in Minnesota.

There are no cases the court is aware of addressing whether training qualifies as "performing services for hire," but a plain reading of the statute suggests that it does not.  The statute's use of the term "performs services for hire in Minnesota" signifies that the employee must engage in commercial activity, i.e., earn money for its employer while in the state.  Indeed, if training were sufficient, then any employee of a Minnesota company who comes to the state for training would be protected by the MWA.  The Minnesota legislature's limited definition of "employee" indicates that it had no such intention.  If it had, the legislature could have readily defined the term employee more broadly.  The court is therefore unpersuaded that training in Minnesota is sufficient to meet the definition of employee under the MWA.  Because Ghosh does not plausibly allege that he performed services for hire in Minnesota – even considering the allegations raised in the proposed second amended complaint - he cannot be deemed an employee under the MWA.

The court further agrees with defendants that Ghosh did not have an ongoing physical presence here, which also precludes a finding of employee status under the MWA.

"[C]ourts have required physical presence to find a person is an employee protected under the MWA." Kuklenski v. Medtronic USA, Inc., 702 F. Supp. 3d 783, 792 (D. Minn. 2023) (citing cases). Further, the legislature's use of the present tense - "performing services for hire in Minnesota" – contemplates an "ongoing physical presence" in the state for work. Id. Otherwise, the statute would say "performed" services for hire in Minnesota. See United States v. Wilson, 503 U.S. 329, 333 (1992) ("[U]se of a verb tense is significant in construing statutes")). The present tense is used to express[] action or state in the present time[.]" Kuklenski, 702 F. Supp. 3d at 791 (citation omitted). As a result, the MWA "protects individuals who reside or work in Minnesota when there is a direct connection between their Minnesota presence and their employer's statutory violation."[7] Id. at 792; see also Walton v. Medtronic USA, Inc., No. 22cv50, 2024 WL 3071477, at *3 (D. Minn.

---

[7] This reading is consistent with the "presumption against the extra-territorial application of a state's statutes." Arnold v. Cargill, Inc., No. 01cv2086, 2002 WL 1576141, at *2 (D. Minn. July 15, 2002). Although "protecting against the potential conflict of law that could arise if one state's statute were to be applied to persons within the borders of another state, such a presumption also serves 'to avoid running afoul of the Commerce Clause of the United States Constitution.'" Id.

June 20, 2024) (adopting the reasoning and approach set forth in Kuklenski under the analogous Minnesota Human Rights Act).

Ghosh has not alleged the ongoing presence necessary to meet this standard. He spent a total of twelve days in Minnesota during his employment, all for training. When he was fired, he was not performing services for hire regularly – or at all - in Minnesota. He completed training in Minnesota on Aril 28, 2023, over a month before CSI fired him, and did not return to Minnesota in the interim.[8] In his proposed second amended complaint, he alleges that CSI typically had sales representatives return to Minnesota yearly for additional training and that he expected that he would be required to do so. ECF No. 26-2 ¶ 39. But he does not allege that he was scheduled to be in Minnesota in the future or that he was told further visits to Minnesota would be necessary or even likely. In other words, whether Ghosh would have been hailed to Minnesota by CSI at some future time is unknown and speculative at best. This new allegation does not alter the court's analysis.

Ghosh's reliance on Kozlowski v. American Tissue Services Foundation, No. 06cv295, 2007 WL 2885365, at *3 n.8 (D. Minn. Sept. 27, 2007), is unavailing. He contends that Kozloski supports his position because it held that one visit to Minnesota for training

---

[8] Ghosh did complain about possible fraud on April 26, 2023, while in Minnesota for training, but the alleged fraud involved a client account in Hawaii. See Am. Compl. 35-70.

13

by an out-of-state employee was sufficient to trigger coverage under the MWA. But the court's discussion of this issue was brief, placed in a footnote, and apparently not seriously litigated. Further, the court's conclusion that plaintiff "perform[ed] services for hire in Minnesota" ignores the MWA's present tense requirement.[9] See id. As discussed above, subsequent cases make clear that ongoing presence in the state is necessary to secure coverage under the MWA.

The court is also unpersuaded by Ghosh's argument that he was a "Minnesota-based employee working remotely from Hawaii." Am. Compl. ¶ 30. In support, he points to the fact that he had regular telephonic and web-based meetings with CSI managers in Minnesota. Id. Regardless of those remote meetings, Ghosh was an employee of CSI based in Hawaii to generate sales within Hawaii; he did not just "happen to be" in Hawaii. See id. ¶¶ 23, 28, 30, 97.

For these reasons, the court finds that Ghosh does not have a viable claim under the MWA.[10]

---

[9] In Kuklenski, the court acknowledged the tense discrepancy in Kozloski and noted that the "better interpretation of the statute it that it requires some ongoing physical presence." Kuklenski, 702 F. Supp. 3d at 792 n.9. As the author of Kozloski, the undersigned agrees.

[10] Because the court concludes that Ghosh has not plausibly alleged that he was an employee under the MWA, it need not determine whether Ghosh sufficiently alleged that CSI violated the Anti-kickback Statute.

**C.   HWPA**

In the amended complaint, Ghosh raised a claim under the HWPA for the first time. Defendants argue that the HWPA claim fails as a matter of law given the parties' broad choice of law provision in the employment agreement. The agreement provides that "this Agreement and the rights of the parties will be governed by and construed and enforced in accordance with the laws of the State of Minnesota." Compl. ¶ 15; Am. Compl. ¶ 19; ECF No. 34, at 14. The parties agree that choice-of-law provision are generally enforced. See Airtel Wireless, LLC v. Montana Elecs. Co., 393 F. Supp. 2d 777, at 793 (D. Minn. 2005). They dispute whether the choice-of-law provision covers Ghosh's non-contractual statutory claim under the HWPA. The court concludes that it does.

First, the choice-of-law provision does not merely say that Minnesota law applies to the agreement. Rather, it says that Minnesota law applies to the agreement <u>and</u> the "rights of the parties." The "rights of the parties" plainly includes claims beyond any contractual claims that may exist. One of the "rights" Ghosh had in his employment relationship with CSI was to file a claim under an applicable whistleblower statute. Ghosh in effect agreed that any such claim would have to be brought under Minnesota law, thus waiving a claim under the HWPA.

Second, contrary to Ghosh's argument, statutory claims – including whistleblower claims – are waivable.[11]  See <u>Buche v. Liventa Bioscience, Inc.</u>, 112 F. Supp. 3d 883, 887 (D. Minn. 2015) (Americans have the freedom to waive countless ... rights that would seem equally or more important [than statutory claims]."); <u>Rao v. St. Jude Med. S.C., Inc.</u>, No. 19cv923, 2020 WL 4060670, at *4-5 n.8 (D. Minn. May 26, 2020), report and recommendation adopted, 2020 WL 4059876 (D. Minn. July 20, 2020) ("This Court notes ... that a party who agrees to a choice-of-law provision in an employment agreement may be giving up some of their rights that they may otherwise have if another state's law applied.  This does not make the outcome inherently unfair.").  Although legislatures may expressly prevent statutes from being waived, <u>see, e.g.</u>, Haw. Rev. Stat. Ann. § 521-31(a) ("Except as otherwise provided in this chapter, a tenant or landlord may not waive or agree to forego rights or remedies under this chapter."), the Hawaii legislature did not do so with respect to the HWPA.  <u>See</u> Haw. Rev. Stat. Ann. § 378-62.

---

[11] Oddly, elsewhere in his brief Ghosh seems to acknowledge that statutory claims may be waived.  <u>See</u> ECF No. 34, at 20 (noting that defendants "correctly" stated that "there could be circumstances where a party is out of luck when they agree to a choice of law clause").

16

For these reasons, Ghosh does not have a tenable claim under the HWPA. As a result, Ghosh's complaint fails to state a claim for which relief can be granted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion to amend the complaint [ECF No. 26] is denied;

2. The motion to dismiss [ECF No. 21] is granted; and

3. This case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: October 21, 2024                s/David S. Doty
                                       David S. Doty, Judge
                                       United States District Court